[Civil No. 2118.  Filed April 5, 1924.]

[224 Pac. 808.]

T. I. PEEVEY, Plaintiff and Appellant, v. J. M. DICKSON, Defendant.  ARIZONA PIMA COTTON GROWERS, a Corporation, Garnishee and Appellee.

1. GARNISHMENT—LIABILITY OF GARNISHEE DETERMINED AS OF TIME WRIT WAS SERVED ON HIM.—The liability of a garnishee depends upon the facts as they are found to exist at the time the writ was served on it.

2. ATTACHMENT—EVIDENCE HELD NOT TO SHOW VALID LEVY OF ATTACHMENT ON COTTON.—Evidence that an officer making the levy of an attachment on cotton never took the property into possession, nor even saw the same which had lost its identity and had been shipped out of the state, held insufficient in view of Civ. Code 1913, paragraph 1409, and paragraph 1364, subdivision 2, to show any legal levy or attachment on the property.

3. GARNISHMENT — GARNISHEE MAY PLEAD PRIOR ATTACHMENT IN ANSWER TO TENDER OF ISSUE.—If a garnishee receives the prop-

---

1.  See 12 R. C. L. 850.
2.  See 17 R. C. L. 179.

erty sought to be attached from the sheriff in a prior levy, it is proper for it to plead that fact in its answer to the tender of issue to the writ of garnishment thereto.

4. GARNISHMENT—EVIDENCE HELD TO SHOW THAT PART OF PURCHASE PRICE WAS DUE SELLER OF COTTON ON DATE OF WRIT OF GARNISHMENT SERVED.—Evidence *held* to show that garnishee purchased cotton and that part of the purchase price was still due defendant seller on the date the writ was served.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Frank H. Lyman, Judge. Judgment reversed.

### STATEMENT OF FACTS.

The appellant, as plaintiff, on the seventeenth day of December, 1921, obtained a judgment in the superior court of Maricopa county, Arizona, against J. M. Dickson for $1,154.16, together with interest thereon at the rate of 10 per cent per annum from December 17, 1921, and $115.41 for attorney's fees, and costs of suits, taxed at $21.75.

The appellant, T. I. Peevey, on the fifth day of January, 1922, caused a writ of garnishment to issue in said action, directed to the Arizona Pima Cotton Growers, a corporation, as garnishee. Said writ was served on garnishee on the fifth day of January, 1922, and on the thirteenth day of January, 1922, garnishee filed its answer in writing and under oath, denying any indebtedness to said defendant, J. M. Dickson, or that it had any effects of the defendant in its possession, and knows of no persons, firms or corporations who have effects belonging to him in their possession, except the sheriff of Maricopa county, Arizona.

Appellant controverted the answer of garnishee by his affidavit, and tendered an issue in garnishment on the seventeenth day of January, 1922, alleging in his tender of issue that at the time of the issuance

See 28 C. J. 243, 412, 469.

and service of the writ of garnishment in this action, and also at the time of the filing of the garnishee's answer herein, that said garnishee was indebted to the defendant, J. M. Dickson, or had effects in its possession belonging to Dickson, in that prior to the date of the issuance and service of the writ of garnishment upon said garnishee, there was delivered to it ten bales of long staple cotton belonging to Dickson, which said cotton stood upon the books of the garnishee in the name of J. M. Dickson at the date when the writ of garnishment was served upon it; that prior to the service of the writ of garnishment, said garnishee shipped said cotton out of the state of Arizona to New Bedford, Mass.; and that said cotton was shipped for and on account of the defendant herein; that at the time of the service of said writ of garnishment upon garnishee, it had or should have had in its possession either the proceeds of sale of said cotton for the use and benefit of defendant herein, or it had, or should have had, evidences of indebtedness from the purchasers thereof, or effects in its possession belonging to defendant, Dickson.

The Arizona Pima Cotton Growers, a corporation, garnishee herein, on the 26th of January, 1922, filed its answer in writing and under oath, to the tender of issue in garnishment, denying in its answer that it was indebted to Dickson, or had any effects belonging to him in its possession, and did not know of any other firms or corporations who are indebted to Dickson, or have effects belonging to him in their possession, except the sheriff of Maricopa county, Arizona.

Garnishee admits that prior to the service of the writ of garnishment it had received from J. M. Dickson certain bales of cotton produced by him, but claims that pursuant to a certain contract between garnishee and Dickson that it had purchased the cotton from Dickson and made payments on it, and

that the title to the cotton had passed from Dickson to garnishee, and denies that the cotton was handled for or on account of Dickson, and denies that it is indebted to him, or has any effects belonging to him in its hands.

Mr. M. T. Phelps and Messrs. Cox & Moore, for Appellant.

Messrs. Elliott & Swenson, for Appellee.

JONES, Superior Court Judge (After Stating the Facts as Above).—The issue in garnishment was tried by the lower court without a jury on the nineteenth day of June, 1922, and judgment rendered against plaintiff as appellant herein; and in ·favor of garnishee, from which order of the lower court dissolving the garnishment appellant appeals.

There is but one assignment of error by appellant, and that is that the lower court erred in quashing the writ of garnishment and rendering judgment for garnishee.  Our statutes very clearly outline the mode of procedure in garnishment.  The statutes, in cases where there is a tender of issue made, contemplate a trial upon the evidence as in ordinary litigated actions.  The tender of issue, answer of garnishee to the tender of issue, and the reply of the appellant form the pleadings in this case.

Under the general assignment of error by appellant's counsel that the court erred in granting judgment for the garnishee, we are compelled to carefully examine the entire record to ascertain whether the error complained of is correct, and in order to determine the liability of the garnishee, we must look to the facts as they were found to exist at the time the writ was served. Appellee raises no question as to either the affidavit or bond of the appellant, so the entire question is:  Did the garnishee owe de-

fendant debtor anything, or have effects in its hands belonging to him at the time of service of the writ?

Counsel for appellee in their brief contend that a prior attachment had been served in another suit, and levied on the cotton of the judgment debtor herein, and that the garnishee received the cotton from the sheriff and not from the judgment debtor, and that in all its transactions the garnishee was the agent of the sheriff to whom it was directly accountable.

Nowhere in the garnishee's answer is a word said about a prior attachment against this cotton, nor do we find anywhere in the record any writ of attachment introduced. The entire testimony concerning a prior attachment is oral. The deputy sheriff, who claims to have made the levy, states that he never saw the cotton, but was told by Mr. Morgan, secretary of the Arizona Pima Cotton Growers, that the cotton was in their custody, and he (Morgan) had the bale receipts, and the reason why witness did not see the cotton was that it was graded and put in with hundreds of other bales of cotton. Witness further states he never had the cotton in his possession, and attached it only by taking the Arizona Pima Cotton Growers' receipt for it, and said if required to deliver the cotton to the court for execution upon a judgment of foreclosure on the attachment he did not think he could as it had lost its identity by being mingled with other cotton. He said he wanted to get possession of the cotton but could not, and stated:

"The best I could do under the circumstances was to take their receipt for it, if they were willing to give me their receipt for the cotton, why I would assume that they had it there and they were a responsible organization."

Witness states he made a crop levy in August, 1921, by recording same, but nowhere states that he ever saw the cotton, or took it into his possession.

Paragraph 1409 of the Revised Statutes of Arizona 1913 says:

"The writ of attachment shall be levied in the same manner as is or may be the writ of execution. . . . "

And subdivision 2 of paragraph 1364 of the same statute says:

"A levy on personal property is made by taking possession thereof, when the defendant in execution is entitled to the possession. . . . "

The record shows that the officer making the levy of the attachment never took the property into possession—no, not even as much as saw same—and that it had lost its identity, and had been shipped out of the state. If counsel for appellee are correct in their view that the garnishee received the cotton from the sheriff, it would have been proper pleading for the garnishee to have pleaded such in its answer to the tender of issue, and if it had proven this to be a fact, it would have been a good defense to this writ of garnishment; but the answer of garnishee and the position taken by counsel in their brief do not agree, and we shall not attempt to reconcile this difference, but look to the record for the facts, and in so doing we fail to find that there was any prior legal levy of any attachment on the cotton in controversy.

We will look to the answer of the garnishee to the tender of issue, and the evidence on this point. It is admitted by garnishee that it purchased the ten bales of cotton from Dickson under a certain contract, and made payments on same, and that at the time the writ of garnishment was served on it the title to the cotton was in garnishee. It is evident from the testimony of the garnishee's own officers that on the sixth day of January, 1922 (which is the time of the service of the writ of garnishment on garnishee), it had in its hands $993.08 which was due on the cotton purchased from Dickson, and still holds this amount; that the only payments made on the cotton were $146.90 paid to First National Bank of Chandler on

Dickson's account, and $129.93 paid for ginning the cotton.

Quoting from the record the testimony of J. B. Showers, treasurer of the Arizona Pima Cotton Growers, a corporation:

"Can you tell, Mr. Showers, whether or not the association owed Mr. Dickson any moneys? A. The records show that there are $993.08 coming on this account as owed February 2, 1922. Q. Will you look upon your records and tell us from your records whether or not anything was owed on this account January 6, 1922? A. There is nothing to show definitely that there was. I am of the opinion, however, that there was. Q. Then did you owe him (Dickson) anything? A. Very clearly we did, very likely we did. Q. You stated that your records now show that you now have $993.08 upon that cotton now due? A. Due somebody. Q. That amount had not been paid on the 6th day of January, 1922? A. No. Q. Now, what was due on the date of your answer in garnishment? A. What is that date? Q. That is the 6th of January? A. I don't think there is any difference. I think it is the same."

There is sufficient and substantial evidence in the record to show to our mind that the garnishee purchased this cotton from Dickson, and that there was still due from garnishee to Dickson on the sixth day of January, 1922, the sum of $993.08 belonging to defendant Dickson, which was subject to the writ of garnishment.

The judgment is reversed, with instructions to the lower court to enter judgment in favor of T. I. Peevey, plaintiff and appellant, against the Arizona Pima Cotton Growers, a corporation, garnishee and appellee herein, for the sum of $993.08.

McALISTER, C. J., and ROSS, J., concur.

NOTE.—Judge LYMAN being disqualified, Hon. J. E. JONES, Judge of the Superior Court of Coconino County, was called to sit in his stead.