FILED

NOV 16 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| STRATEGIC DIVERSITY, INC., a Massachusetts corporation; and KENNETH P. WEISS, an unmarried man, | No. 14-16754 |
| Plaintiffs-Appellees, | D.C. No. 2:07-cv-00929-GMS |
| v. | MEMORANDUM* |
| ALCHEMIX CORPORATION, an Arizona corporation; and CHERYL HALOTA HORTON, wife, | |
| Defendants, | |
| and | |
| ROBERT R. HORTON, husband; and MEDICI ASSOCIATES, LLC, a Delaware limited liability company, | |
| Defendants-Appellants. | |

| | |
|---|---|
| STRATEGIC DIVERSITY, INC., a Massachusetts corporation; and KENNETH P. WEISS, an unmarried man, | No. 14-16887 |
| Plaintiffs-Appellants, | D.C. No. 2:07-cv-00929-GMS |

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

v.

ALCHEMIX CORPORATION, an Arizona corporation; and CHERYL HALOTA HORTON, wife,

Defendants,

and

ROBERT R. HORTON, husband; and MEDICI ASSOCIATES, LLC, a Delaware limited liability company,

Defendants-Appellees.

STRATEGIC DIVERSITY, INC., a Massachusetts corporation; and KENNETH P. WEISS, an unmarried man,

Plaintiffs-Appellants,

v.

ALCHEMIX CORPORATION, an Arizona corporation; et al.,

Defendants-Appellees.

No.    14-17051

D.C. No. 2:07-cv-00929-GMS

Appeals from the United States District Court
for the District of Arizona
G. Murray Snow, District Judge, Presiding

2

Before:  GRABER and MURGUIA, Circuit Judges, and BENNETT,[**] District Judge.

In June 2001, Kenneth Weiss loaned Alchemix Corporation ("Alchemix") $500,000 through his investment company, Strategic Diversity, Inc. ("Strategic"). In return, Alchemix granted Strategic a security interest in its patents and gave Weiss a seat on the Alchemix board of directors.

One year later, Robert Horton, CEO of Alchemix, entered into an investment deal with Western Oil Sands ("Western") in which Western committed to an initial $3 million investment in Alchemix with the option to invest an additional $33 million. Horton spoke with Weiss and assured him that Western's investment of the additional $33 million would be a "certainty" if Strategic accepted early repayment of the Alchemix loan, relinquished its security interest in the patents, and gave up Weiss' board seat. Horton also offered Weiss shares of Alchemix stock at $1.00/share. Weiss agreed. On July 2, 2002, Strategic accepted early repayment of the Alchemix loan and made the requested concessions. On July 8, 2002, Weiss purchased 250,000 shares of Alchemix stock at $1.00 per share. Weiss

---

[**]    The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa, sitting by designation.

3

purchased his shares from Medici Associates, LLC ("Medici"), Horton's holding company. Richard Armstrong, Alchemix's CFO, handled all the negotiations and documentation.

Sometime in late June or early July of 2002, Western decided not to invest the additional $33 million. Horton immediately informed the Alchemix board, but not Weiss, who was no longer on the board. The first time Weiss learned about Western's decision to halt further investment was in 2005 when he asked Horton for an update on his Alchemix stock.

In 2007, Weiss and Strategic filed suit in federal court against Horton, Alchemix, Medici, and Horton's wife Cheryl (only as a nominal defendant to recover community property). The complaint alleged federal and state securities fraud, along with several other contract and fraud claims. The district court entered summary judgment for Defendants on all claims, and Weiss appealed. We reversed and remanded only as to the federal and state securities fraud claims. *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1211 (9th Cir. 2012)

On remand, Strategic withdrew from the case, and Weiss proceeded as the sole plaintiff. A jury found that Horton had committed a material omission or misrepresentation in connection with Weiss' stock purchase. As a result, Medici was found liable for securities fraud because it sold the stock. The district court

4

also found Horton, but not Alchemix, jointly and severally liable. Finally, the district court declined to enter judgment against Robert and Cheryl Horton's marital community because Weiss failed to produce evidence of Robert Horton's contribution to the community property.

After a bench trial, Weiss decided to forgo damages and opted for a true rescission with Medici. The district court awarded Weiss rescission of the stock deal, and he recovered the $250,000 purchase price. The district court denied Weiss punitive damages and prejudgment interest. The court also declined to specify the rate of post-judgment interest.

Both parties filed motions for attorney fees after final judgment. The court denied in part Weiss' request of $979,000 and awarded him only $143,400. The court also partially granted Defendants' request for attorney fees and awarded $387,212. Finally, the court denied Weiss expert costs for his damages expert and granted Alchemix costs as a prevailing party.

On appeal, three different aspects of the proceedings are challenged: the jury verdict, the final judgment, and the attorney fees order. We affirm the district court on all issues except prejudgment interest and Weiss' attorney fees.

1. We must sustain a jury verdict "if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is

5

also possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). Here, circumstantial evidence showed that Horton knew of Western's decision before July 8, 2002: the timing of Western's call (between July 3 and July 15); Western's decision to abruptly abandon inspection of the Alchemix site (late June); and Horton's $900,000 loan to Alchemix, which was inconsistent with the terms of the Western deal (late June or early July). That evidence supports a reasonable inference that Horton possessed the requisite knowledge before Weiss' stock purchase and, therefore, omitted material information.[1]

**2.** The district court's decision to hold Horton jointly and severally liable is a mixed question of fact and law, which we review de novo. *FMC v. Shoshone-Bannock Tribes*, 905 F.2d 1311, 1313 (9th Cir. 1990). The decision to hold Horton liable as a "controlling person" was supported by Horton's own testimony that Medici was his personal holding company, as well as by Defendants' stipulation that Horton was the sole owner and sole member of Medici. *See* Ariz. Rev. Stat. § 44-1999(B) ("Every person who . . . controls any

---

[1] Because either an omission *or* a misrepresentation suffices to prove a violation of the Arizona Securities Act, *see* Ariz. Rev. Stat. § 44-1991(A)(2), we do not reach the question whether sufficient evidence supported the jury's finding of a material misrepresentation.

person liable for violation of [securities fraud] is liable jointly and severally with and to the same extent as the controlled person . . . .").

3.      The decision declining to hold Alchemix jointly and severally liable is a mixed question of fact and law, which we review de novo. *Shoshone-Bannock Tribes*, 905 F.2d at 1313. The district court did not err in holding that Alchemix, through its CFO Richard Armstrong, did not "participate" in the stock sale under Arizona Revised Statutes § 44-2003(A) because Armstrong played only a minimal role. *See Grand v. Nacchio* 236 P.3d 398, 403 (Ariz. 2010) (holding that "participation" requires active involvement with a stake in the outcome, not merely an ancillary role in the stock sale). The bulk of Armstrong's dealings concerned the repayment of Strategic's Note—not Weiss' stock purchase. It was also unclear whether Armstrong was acting as an agent of Alchemix in his negotiations with Weiss.

4.      The denial of punitive damages is reviewed for abuse of discretion. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1111 (9th Cir. 2001). The district court correctly held that the jury's finding of a knowing securities violation is insufficient by itself to justify punitive damages. *Rawlings v. Apodaca*, 726 P.2d 565, 578 (Ariz. 1986). The district court also did not abuse its discretion in concluding that Horton's prior business failures and financial non-disclosures

7

did not justify punitive damages, as they were unrelated to the stock transaction at issue here. *See Gurule v. Ill. Mut. Life & Cas. Co.*, 734 P.2d 85, 87 (Ariz. 1987) (explaining that prior harmful conduct must be related to present acts, such that a defendant would know of the potential for injury).

**5.** The decision declining to specify the rate of post-judgment interest is reviewed for abuse of discretion. The district court was legally correct in holding that neither 28 U.S.C. § 1961(a) nor District of Arizona Local Rule 58.1(a) requires federal courts to specify the rate of post-judgment interest. *Perkins v. Standard Oil Co. of Cal.*, 487 F.2d 672, 675 (9th Cir. 1973).

**6.** The decision declining to enter judgment against the Hortons' marital community is a question of state law interpretation, which we review de novo. *Gibson ex rel. Gibson v. County of Riverside*, 132 F.3d 1311, 1312 (9th Cir. 1997). The district court did not err in declining to enter judgment now against the Hortons' marital community because, pursuant to Arizona Revised Statutes § 25-215(B), Weiss can seek to recover from Robert Horton's contributions to the community property in a separate, future action to enforce the judgment. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Greene*, 985 P.2d 590, 596 (Ariz. Ct. App. 1999) (demonstrating that a plaintiff can seek to recover from the marital community in a subsequent proceeding to enforce the judgment).

**7.** We review for abuse of discretion the district court's grant of costs to Alchemix. *Draper v.* Rosario, 836 F.3d 1072, 1087 (9th Cir. 2016). The district court did not err in awarding costs to Alchemix as a "prevailing party" because judgment was entered in its favor after it successfully defended against all the claims brought by Weiss and Strategic. *See d'Hedouville v. Pioneer Hotel Co.*, 552 F.2d 886, 896 (9th Cir. 1977) ("A party in whose favor judgment is rendered is generally the prevailing party for purposes of Rule 54(d).").

**8**. We review for abuse of discretion the district court's denial of Weiss' costs spent on the damages expert. *Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc.*, 976 F.2d 541, 551 (9th Cir. 1992). The district court correctly concluded that costs expended on the damages expert were unnecessary to the ultimate recovery because Weiss did not rely on a single piece of evidence or expert opinion adduced at the bench trial.

**9.** We review de novo the district court's decision that Defendants were entitled to attorney fees. *Kona Enters., Inc. v. Estate of Bishop ex rel. Peters*, 229 F.3d 877, 883 (9th Cir. 2000). The district court did not err because Arizona Revised Statutes § 12-341.01 permits fees to successful parties in actions arising out of contract.

First, the Arizona Securities Act does not displace § 12-341.01, because this is not a situation in which a party seeks to circumvent a specific attorney fee provision. *Compare Lange v. Lotzer*, 727 P.2d 38 (Ariz. Ct. App. 1986), *with Chaurasia v. Gen. Motors Corp.*, 126 P.3d 165 (Ariz. Ct. App. 2006). Here, Weiss alleged both securities and contract claims, and each type of claim allows attorney fees. Defendants are not attempting to undermine the Arizona Securities Act's one-way fee provision by seeking fees on the securities claim; rather, they seek fees for successfully defending the six contract-based claims, which alleged fraudulent inducement. *See Marcus v. Fox*, 723 P.2d 682, 684 (Ariz. 1986) (holding that § 12-341.01 applies to actions seeking to invalidate a contract based on fraudulent inducement).

Next, the court reasonably determined that Defendants were "successful parties" because they defended against seven out of eight claims, completely defeated Strategic in the action, and prevented the bulk of relief sought by prevailing on the debt-equity swap theory. *See Schwartz v. Farmers Ins. Co. of Ariz.*, 800 P.2d 20, 25 (Ariz. Ct. App. 1990) ("The trial court possesses discretion to determine who is the successful party in multiple-party litigation and in cases where there are multiple-parties as well as multiple-claims.").

**10.** We review for abuse of discretion the denial of prejudgment interest under state law. *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1020 (9th Cir. 2003).

The Arizona Securities Act allows a defrauded purchaser "to recover the consideration paid for the securities, with interest." Ariz. Rev. Stat. § 44-2001(A). "The general rule in Arizona is that a liquidated claim entitles its holder to prejudgment interest." *Trimble v. Am. Sav. Life Ins. Co.*, 733 P.2d 1131, 1140 (Ariz. Ct. App. 1986). A claim is liquidated if the amount sought can be calculated with exactness and does not rely on opinion or discretion. *Able Distrib. Co. v. James Lampe, Gen. Contractor*, 773 P.2d 504, 511 (Ariz. Ct. App. 1989).

The court erred in denying prejudgment interest because the $250,000 that Weiss recovered is a liquidated sum. Weiss alleged a claim under the Arizona Securities Act for the "consideration paid," and he expressly stated the amount paid for the stock ($250,000). *See Homes & Son Constr. Co. v. Bolo Corp.*, 526 P.2d 1258, 1261 (Ariz. Ct. App. 1974) (holding that a claim is liquidated if it provides sufficient information "to enable [a defendant] to ascertain the amount owed").

**11.** Finally, we review for abuse of discretion the district court's decision to grant only part of Weiss' request for attorney fees. *Price v. Seydel*, 961 F.2d 1470, 1475 (9th Cir. 1992).

The court erred in refusing to award any fees for research, discovery, or trial work performed on the debt-equity swap theory. The debt-equity swap theory is a legally cognizable claim for rescission under the Arizona Securities Act. *Grand,* 236 P.3d at 401. Moreover, in the first appeal, we tacitly endorsed the legal viability of the theory by allowing Weiss to obtain rescissionary damages on the entire debt-equity swap. *Strategic Diversity*, 666 F.3d at 1208. Finally, the debt-equity swap theory was premised on the same misrepresentations by Horton that induced Weiss' stock sale; therefore, any work done on the debt-equity swap theory is inextricably intertwined with the claim on which Weiss ultimately prevailed. *See Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 212 P.3d 853, 860 (Ariz. Ct. App. 2009) (explaining that a successful party on a claim may recover attorney fees expended in litigating an "interwoven" claim).

But the district court did not err when it refused to award fees for work performed in the damages phase. After conducting an entire bench trial and hiring an expert to opine on rescissionary damages, Weiss ultimately chose to pursue a straight rescission with Medici, rendering the bench trial on damages unnecessary.

12

*See Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1047 (9th Cir. 2000) ("We accord considerable deference to the district court's findings regarding whether hours claimed by prevailing counsel are excessive, redundant or *otherwise unnecessary*." (emphasis added)).

In conclusion, we affirm as to the jury verdict and the following decisions by the district court: holding Horton liable, declining to hold Alchemix liable, denying punitive damages, declining to specify the rate of post-judgment interest, declining to enter judgment against the Hortons' marital community, granting Alchemix's costs, denying Weiss' expert costs, and granting Defendants' attorney fees.

We reverse as to the denial of prejudgment interest and denial in part of Weiss' attorney fees. We remand for the district court to award prejudgment interest on the $250,000 judgment. We also remand for the district court to award attorney fees to Weiss for work performed on the debt-equity swap theory from the inception of the case through the jury verdict. On remand, the district court may reduce fees for hours expended on the unnecessary damages trial and for hours solely attributable to Weiss' unsuccessful contract-based claims.

**AFFIRMED in part, REVERSED in part, and REMANDED**. The parties shall bear their own costs on appeal.